UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA WOOD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 24-CV-00098-CDL |
| | ) |
| INDEPENDENT SCHOOL, | ) |
| DISTRICT NO. 5 OF | ) |
| TULSA COUNTY, OKLAHOMA, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss (Doc. 11). Defendant seeks dismissal of the Plaintiff's claims of employment discrimination in violation of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.* ("ADA"), and for retaliation in violation of the ADA, pursuant to Fed. R. Civ. P. 12(b)(6).

By consent of the parties, the undersigned has the authority to conduct all proceedings and order the entry of a final judgment in this action in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

**I.      Background**

Pursuant to the standards governing a motion under Fed. R. Civ. P. 12(b)(6), the following allegations are accepted as true as set forth in the Complaint (Doc. 2).

Plaintiff began working for the Defendant, Jenks Public Schools (the "School District") in 2005 as a middle school classroom teacher, teaching a variety of science and

social studies courses over the years. She performed the duties of her job satisfactorily and, beginning in 2011, Plaintiff was given an extra duty assignment, including additional compensation, as eighth-grade Team Leader. Plaintiff also obtained the extra-duty position of Key Club Team Leader beginning in 2018. In late 2017, Plaintiff developed an infection that resulted in significant hearing loss. Plaintiff developed compensatory strategies, such as lip-reading, in order to continue teaching, but the hearing loss affected her ability to communicate with students in the classroom.

In the summer of 2020, amid the Covid-19 national emergency, Defendant announced that instruction in the 2020-2021 school year would take place in multiple modes, including in-person classes, all-virtual instruction, and a hybrid model combining virtual and in-person school. Plaintiff alleges that, beginning in mid-2020, she repeatedly requested various forms of accommodation for her hearing impairment. First, in July 2020, she asked to be assigned to a full-time virtual teaching position. Defendant denied that request because there was no such vacancy at the time for which Plaintiff was qualified.

Later the same month, Plaintiff requested accommodations in the form of a hearing aid device and the installation of plexiglass panels in her classroom. Defendant granted her request as to the hearing aid and helped Plaintiff obtain a device in September 2020. Defendant allegedly approved the request for plexiglass panels, but the principal and assistant principal of the middle school allegedly prevented the panels from being installed. Plaintiff ultimately abandoned her efforts to obtain the plexiglass panels because of the principal's "evident upset and hostility about the matter." *Id*. at ¶ 33.

Between April 2021 and May 2022, she continued to inquire about positions and applied for several vacancies within the school district that would accommodate her hearing loss. During an evaluation conference with her assistant principal on April 17, 2022, Plaintiff renewed her request to be assigned to a virtual teaching position, or alternatively to be assigned to a half-day teaching position, to accommodate her hearing impairment. However, Plaintiff alleges that her requests were ignored, and she was not invited to interview for open positions for which she was qualified.

In December 2021, Plaintiff received "unjustifiable" criticism after a teacher observation by her assistant principal. *Id*. at ¶ 40. On May 9, 2022, Plaintiff sent an email to the district superintendent and head of human resources complaining about the inaction on her accommodation requests and complaining that she had been subjected to retaliation. In June 2022, Plaintiff's middle-school principal replaced Plaintiff as the eighth-grade Team Leader for the upcoming school year, but after Plaintiff complained, Principal Brown reinstated her to the Team Leader position. Plaintiff alleges that she experienced emotional upset, worry, and anguish as a result of the principal's actions and that she began considering retirement "as a possible response." *Id*. at ¶ 59.

In September 2022, Plaintiff experienced two separate injuries while at work, but Defendant unreasonably denied her requests to leave school to receive treatment. On October 11, 2022, Principal Brown "unjustifiably" removed Plaintiff from the Team Leader role, causing Plaintiff lost pay and humiliation. *Id*. at ¶ 62. The next day, Plaintiff requested

a meeting with school district personnel "to confer about her employment concerns." *Id*. at ¶ 63.

On October 13, 2022, Plaintiff met with school district personnel regarding "Plaintiff's continuing need for a job accommodation due to her hearing impairment and the related ongoing hostile and retaliatory conduct of Principal Brown" and about the possibility of transferring Plaintiff to a different position within the district. *Id*. ¶ 64. In a follow-up meeting on October 17, 2022, Principal Brown "was angry and verbally attacked Plaintiff," complaining that she was "unprofessional, problematic, and all she did was send long emails complaining to School District leaders about [Principal Brown]." *Id*. at ¶ 66 (alterations and quotation marks omitted). Although upset after Principal Brown's criticism, Plaintiff again explained "why her hearing loss necessitated a job accommodation" and about her more recent struggles with anxiety and depression. *Id*. at ¶ 67. The School District requested medical documentation from Plaintiff but did not follow up with Plaintiff about her job accommodation request. *Id*. at ¶ 68.

On February 22, 2023, Plaintiff sent an email to the director of human resources for the School District, discussing her previous communications with the School District and stating, "I do not know what options I have with [the School District]. But if you have any suggestions or insight, please let me know." *Id*. at ¶ 71. By March 22, 2023, Plaintiff had not received a response or heard from Defendant regarding her accommodation requests. Plaintiff submitted a complaint to the Equal Employment Opportunity Commission (EEOC) but was advised that the EEOC "could not immediately intervene." *Id*. at ¶ 73-74.

Plaintiff submitted her resignation paperwork in March 2023, and Plaintiff left her employment with Defendant after the school year ended.

Plaintiff executed and filed an EEOC Charge of Discrimination form on June 30, 2023, alleging disability-based discrimination and retaliation. The EEOC issued a Notice of Right to Sue dated December 12, 2023, and Plaintiff filed the Complaint (Doc. 2) on March 6, 2024.

## II.     Rule 12(b)(6) Standard

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). It must contain enough "facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).

At this stage, the court must accept all the well-pleaded allegations of the complaint as true and must construe the allegations in the light most favorable to claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs,* 263 F.3d 1151, 1154–55 (10th

Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Cory v. Allstate Ins.,* 583 F.3d 1240, 1244 (10th Cir. 2009) (quoting *Hall v. Bellmon,* 935 F.2d 1106, 1109-10 (10th Cir. 1991)).

**III.   Discussion**

Defendant argues that the Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiff's ADA claims are untimely. Alternatively, Defendant contends the Complaint fails to state a claim under the ADA. For the reasons set forth herein, the Court finds that both arguments lack merit and that Plaintiff has stated sufficient facts in the Complaint to plausibly support her claims of disability-based discrimination and retaliation.

The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "disability" is broadly construed and includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. §§ 12102(1)(A), 12102(4)(A). A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). There are three distinct types of ADA discrimination claims: "(1) disparate treatment; (2) failure to accommodate; and (3)

6

disparate impact." *Dansie v. Union Pac. R. R. Co.,* 42 F.4th 1184, 1193 n. 1 (10th Cir. 2022) (internal citations omitted).

Here, Plaintiff's ADA claims are based on an alleged failure to accommodate her disability and on Defendant's alleged retaliation for seeking accommodations. "Discrimination" under the ADA may include an employer's failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C.A. § 12112(b)(5)(A).

The ADA is enforced according to the procedural requirements set forth under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117(a); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002). Under the applicable procedures, administrative exhaustion requires that a charge of discrimination be filed with a state agency within 300 days "after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1). This period applies to both failure-to-accommodate and retaliation claims. *See Stratton v. Sutherland Global Servs., Inc.*, 2020 WL 620662, at *3 & n.4 (N.D. Okla. Feb. 10, 2020) (unpublished).[1]

---

[1] Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

It is uncontested that the Plaintiff perfected her charge of discrimination with the EEOC, alleging disability discrimination and retaliation, no later than June 30, 2023.[2] By perfecting her charge on that date, the 300-day period relevant to her filing runs from September 3, 2022, to June 30, 2023. Thus, the question is whether the Complaint alleges facts plausibly showing that an unreasonable failure to accommodate Plaintiff's hearing-related impairment, and any alleged retaliation in violation of the ADA, occurred on or after September 3, 2022.

Defendant contends that Plaintiff's discrimination claim is untimely because as alleged in the Complaint, "Plaintiff's requests for accommodation for her employment were well outside the 300-day period of time." (Doc. 11 at 4-5). Defendant incorrectly suggests that the time for filing a charge of discrimination began when Plaintiff requested accommodations for her hearing impairment. *See id*. But that misconstrues the statute; an *employee's* request for accommodation is not an "unlawful employment practice" prohibited by the ADA. 42 U.S.C. § 2000e-5(e)(1). Rather, the Tenth Circuit has held that "it is knowledge of the adverse employment decision itself that triggers the running of the

---

[2]     Plaintiff notes authority providing that the "filing" of a charge with the EEOC may begin with other submissions to the EEOC before a formal charge is executed. (Doc. 14 at 12 n.7). The Complaint alleges that Plaintiff began the process of filing her complaint earlier in 2022. Because the Court finds Plaintiff's claims are timely, for the reasons discussed herein, the issue of whether Plaintiff may be considered to have "filed" a charge earlier than June 30, 2023 is not before the Court at this time.

statute of limitations." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003) (citation omitted).

Defendant argues that the facts alleged in the Complaint are untimely because the alleged conduct does not establish a continuing violation. "[U]nder proper circumstances, a plaintiff may recover for discriminatory acts that occurred prior to the statutory limitations period if they are 'part of a continuing policy or practice that includes the act or acts within the statutory period.'" *Davidson*, 337 F.3d at 1183 (citation omitted)). However, it is not necessary to decide at this stage whether the continuing violation doctrine applies, because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002); *see Davidson*, 337 F.3d at 1184.

Based on the facts alleged in the Complaint, Plaintiff has plausibly alleged that she requested accommodations for her disability that were unreasonably denied between September 2022 and June 2023. Notwithstanding background allegations occurring before the 300-day look-back period, the Complaint alleges that the Plaintiff engaged in discussions and/or email communication with School District personnel on October 13, 2022, October 17, 2022, and February 22, 2023, related to her requests for hearing impairment-related job accommodation. (Doc. 2 at ¶¶ 63-64, 67, 71). Plaintiff alleges that the School District took no specific action in response to requests for accommodation she made on those dates. *Id*. ¶¶ 69, 72, 77.

Thus, construed in the light most favorable to Plaintiff, the Complaint alleges facts constituting an unlawful practice under the ADA that occurred within the 300-day period. Specifically, the Complaint alleges facts plausibly establishing that Defendant failed to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," 42 U.S.C.A. § 12112(b)(5)(A). So long as one or more such decisions falls within the 300-day period, it is immaterial whether the complaint alleges prior instances of discrimination. *See Morgan*, 536 U.S. at 113 ("Nor does [Title VII] bar an employee from using . . . prior acts as background evidence in support of a timely claim."); *see also Watts v. Okla. Dep't of Mental Health & Substance Abuse Servs.*, No. CIV-19-1072-D, 2020 WL 2562811, at *2 (W.D. Okla. May 20, 2020) (unpublished) (addressing claims under Oklahoma Anti-Discrimination Act) ("Further, the only consequence of an untimely filing in relation to earlier acts of discrimination would be to limit the time period of recoverable damages, if liability is otherwise established.").

Defendant also argues that Plaintiff has failed to state a claim of ADA-prohibited discrimination. Such a claimant must allege that "(1) [she] is disabled as defined under ADA; (2) [she] is qualified, with or without reasonable accommodation by [the defendant,] to perform the essential functions of the job; and (3) [she] was discriminated against because of [her] disability." *Hester v. Osage Landfill, Inc.*, No. 23-CV-00341-GKF-MTS, 2024 WL 101854, at *3 (N.D. Okla. Jan. 9, 2024) (unpublished) (citations omitted); *see Siemon v. AT&T Corp.*, 117 F.3d 1173, 1175 (10th Cir. 1997).

As to the first element, to show an actual disability under § 12102(1)(A), a plaintiff must "(1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Callahan v. Commc'n Graphics*, 2015 WL 5156888, *5 (N.D. Okla. Sept. 2, 2015) (unpublished) (quoting *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014)). "The first two requirements are questions of law, while the third is a question of fact. *Id*. (citing *Sanchez v. Vilsack*, 695 F.3d 1174, 1179 (10th Cir. 2012)). In the Complaint, Plaintiff alleges that she is deaf in her left ear and has moderate to severe hearing loss in her right ear. (Doc. 2, ¶¶ 16, 70). She alleges that her hearing loss has adversely affected her ability to communicate and interact with students in the classroom. *Id*. ¶ 17. Hearing is recognized as a major life activity, 42 U.S.C. § 12102(2)(A), and Defendant concedes that hearing loss "could qualify as an impairment under the ADA." (Doc. 11 at 7). Defendant asserts that Plaintiff has failed to provide "any individual assessment of how her hearing impairs her." *Id*. However, Defendant points to no authority that an ADA discrimination claimant must do so at the pleading stage.

The Court thus concludes the Complaint plausibly alleges that Plaintiff has a disability. Defendant does not dispute that Plaintiff satisfied the second element by alleging that she is a qualified individual within the meaning of the ADA. (Doc. 11 at 7; *see also* Doc. 2 ¶ 81). Defendant argues that Plaintiff failed to allege that she was subject to an adverse employment action, because the Complaint alleges that Plaintiff resigned from her position. However, "an adverse employment action is not a requisite element of an ADA

11

failure-to-accommodate claim." *Exby-Stolley v. Board of Cnty. Comm'rs,* 979 F.3d 784, 788 (10th Cir. 2020). Rather, "the third element of this general test—that the individual was "discriminated against because of her disability"—is satisfied in a failure-to-accommodate claim *as soon as* the employer, with adequate notice of the disabled employee's request for some accommodation, fails to provide a reasonable accommodation." *Id*. at 795 (emphasis in original) (citation omitted). Here, the Complaint plainly alleges that Defendant received notice of Plaintiff's hearing impairment and failed to provide her with a reasonable job accommodation (*see* Doc. 2 ¶¶ 2, 82-84), and further alleged that Defendant failed to engage Plaintiff in the reasonable accommodation process. *Id*. ¶ 84. The Complaint thus adequately states a claim for ADA discrimination.

Defendant argues that the Complaint fails to state a plausible claim of ADA retaliation. The ADA prohibits discrimination against any person for opposing "any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To establish a prima facie case for retaliation under the ADA, Plaintiff must show that (1) she engaged in a protected activity under the applicable statute; (2) a reasonable employee would have found Defendant's conduct materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action. *Blakely v. Cessna Aircraft Co.*, 256 F. Supp. 3d 1169, 1174 (D. Kan. 2017). At the pleading stage, "Plaintiff is not required to set forth a prima facie case for each

element," but the Complaint must "set forth plausible claims." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *see Blakely*, 256 F. Supp. at 1174 (D. Kan. 2017).

"Requests for reasonable accommodation are protected activities." *Blakely*, 256 F. Supp. at 1174 (D. Kan. 2017). Thus, Plaintiff has established the first element. Defendant argues that Plaintiff suffered no material adverse action because she resigned her position. However, Plaintiff alleges that, on or about October 11, 2022, she was unjustifiably removed from being her Team Lead, a position she had held for over a decade, and as a result she lost pay and suffered humiliation. (*See* Doc. 2 ¶ 62). As such, Plaintiff alleges Defendant took an action that a reasonable worker could find materially adverse. *See Burlington N. and Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citation and quotation marks omitted) (holding employer's action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination").

Defendant argues that the Complaint fails to plausibly show a causal connection between Plaintiff's requests for accommodation and any adverse action, noting that Plaintiff allegedly began requesting hearing-related accommodations several years before the end of her employment with Defendant. Less than one week after Plaintiff was removed from the Team Lead position, during an October 17th, 2022 meeting with School District personnel to discuss Plaintiff's accommodation requests, Principal Brown allegedly berated the Plaintiff, accusing her of "'send[ing] [the district] long emails'" complaining about him." (Doc. 2 at ¶ 66). Principal Brown then allegedly stated the Plaintiff did not deserve to be the Team Lead. *Id*. The alleged purpose of the October 17th meeting was to

13

address Plaintiff's request for a job accommodation. *See id*. at ¶¶ 64-66. Thus, the Complaint alleges facts, including temporal proximity and the context of Principal Brown's alleged outburst, plausibly connecting the adverse employment action with Plaintiff's requests for accommodation. See Proctor v. United Parcel Serv., 502 F.3d 1200, 1213 & n.6 (10th Cir. 2007) (recognizing that "protected conduct closely followed by adverse action" may constitute "evidence of circumstances that justify an inference of retaliatory motive" under the ADA). Accordingly, the Complaint plausibly alleges that, because of her request for accommodations, the Plaintiff was subjected to retaliation.

## IV. Conclusion

Based on the above analysis, the Motion to Dismiss (Doc. 11) is **denied**. The Court will enter a scheduling order separately.

IT IS SO ORDERED this 20th day of December, 2024.

*Christine D. Little*
_____
Christine D. Little
United States Magistrate Judge